## SMITH *vs.* THE STATE.

1. An indictment for being the father of a bastard child contained no allegation that the woman was a *single* woman. *Held*, That the indictment was, nevertheless, good.
2. And further, that evidence that she was a single woman was admissible under the indictment.
3. A party being convicted of a misdemeanor, a motion was made by him for a new trial, and in that motion, was incorporated a brief of the evidence as taken down by the court; which brief was agreed to by both parties and approved by the court. The motion was overruled and the same brief was incorporated in a bill of exceptions, (which bill was also agreed to by the parties and sanctioned by the court,) and sent up to the appellate court. That court granted a new trial, and on that trial, a copy of this brief—the copy retained by the lower court, under the law on that subject—was offered as secondary evidence of what a witness had sworn to, on the first trial, a foundation having been laid for the introduction as secondary evidence. *Held*, That the copy was admissible.

Indictment for bastardy, from Henry county. Tried Before Judge CABANISS, at April Term, 1858.

Noah Smith, plaintiff in error, was indicted for bastardy. Upon a former trial, had at April adjourned Term, 1857, he was found guilty, and upon a writ of error to the supreme court, that court reversed the judgment of the court below and ordered a new trial. (See 23d Geo. Rep. 297.) Upon the case coming on again for trial, the State proposed to prove that Seney F. Sears, the mother of the bastard child was a *single white woman*, and counsel for the defendant objected to this proof, on the ground that it was not alleged in the indictment that she was a single white woman. The court overruled the objection and admitted the evidence, and to this ruling defendant excepted.

After the State closed, counsel for defendant tendered in evidence for the purpose of impeaching the witnesses on

the part of the State, the *copy brief of the evidence*, taken
on the former trial, containing the testimony of the same
witnesses, and which copy was on file in the office of the
clerk of the superior court. The *original* brief of this
evidence had been transmitted as a part of the bill of excep-
tions to the supreme court, as required by law, when the
case went up to that court, and the *copy* proposed to be
read, was that required by law to be made and filed by the
clerk in his office upon transmitting the original to the
supreme court.

The State objected to the introduction of this testimony.
The court sustained the objection and excluded the said
copy brief, and defendant excepted.

The defendant having closed his testimony, the court,
among other things, charged the jury "that in criminal
cases the jury are the judges of the law and the facts—
they are sworn to give a true verdict according to the
evidence; and the evidence upon which they are to found
their verdict, was that detailed from the stand by witnesses,
and not from statements of counsel outside the evidence.
It matters not what public opinion might be as to the
guilt or innocence of the defendant, or what any one might
think of his guilt or innocence. Such opinions should
have no influence on their minds—they were under oath
to give a true verdict. according to evidence and not
according to the opinions of others. And so jealous was
the law of the rights of juries as the exclusive judges of
the facts, that a statute had been enacted by the Legisla-
ture, prohibiting the judges of the superior court from
intimating to the jury their opinion as to the facts proved;
and if a judge of the superior court should so far forget
his duty as to intimate to the jury his opinion as to what
facts were proved or not proved, it would be error, and
subject to correction. And in the case before them, they
were to look to the evidence, and from it form their opin-
ion. Whatever might be the opinion of the presiding

judge as to the facts, and whatever might be the opinion of the judges of the supreme court as to the facts, or the individual opinions of the judges of that court as to the facts, were all matters with which they, the jury, had nothing to do. They were under oath to render a true verdict according to the evidence and not according to the opinons of others."

To which charge counsel for the defendant excepted.

The jury found the defendant guilty.

Whereupon counsel moved in arrest of judgment on the ground that it was not alleged in the indictment that the mother of the bastard child was a *single white woman.* The motion was overruled and defendant excepted.

Defendant then moved for a new trial upon the ground of error in the rulings, decision and charge above excepted to, and on the further ground that the verdict was contrary to law and evidence—contrary to the weight of evidence, and contrary to the charge of the court.

The motion for a new trial was overruled, and defendant excepted.

DOYAL & NOLAN, and B. H. OVERBY, for plaintiff in error.

JOHN J. FLOYD, *contra.*

*By the court.*—BENNING, J., delivering the opinion.

Was the court below right in overruling the motion in arrest of judgment?

There was no allegation in the indictment that the woman was a *single* white woman. Was the want of that allegation a fatal defect in the indictment? We think not.

[1.] The first section of the fourteenth division of the Penal Code is in these words: "Every indictment or accusation of the grand jury shall be deemed sufficiently technical and correct, which states the offence in the terms

and language of this Code, or so plainly that the nature of the offence may be easily understood by the jury." This indictment, we think, stated the nature of the offence so plainly, that it was easily to be understood by the jury.

Ought the court below to have granted the motion for a new trial?

The first ground of the motion was, that the court allowed the State to prove that the woman was a *single* white woman.

[2.] We have already held, that the indictment, although not containing an allegation that she was a *single* woman, was good. If the indictment was good, it must follow, that it was right to admit under it any legal evidence suited to establish the indictment. Evidence, that the woman was a single woman, was manifestly suited to do that. Then, for ought that we can see, it was admissible.

The second ground was, that the court excluded from the jury, the copy-brief of the evidence received on the former trial.

In support of the exclusion of this copy, it was argued, first, that it was but a copy.

That is true, but then the original was not accessible. That had been sent up to this court as a part of a case, (the previous case between these same parties,) and had become a paper of this court. There was, therefore, no way by which the State could get the paper itself back into the lower court. Consequently, the case became one for a resort to secondary evidence, and the copy retained in the lower court, was, as secondary evidence, equal to a copy from this court; seeing that it was a copy which the law required to be retained.

It was argued, secondly, that there was no authority for making the original—that the case was not a felony, and that the authority to take down the evidence is confined to cases of felony.

This is all true. There was no law authorizing the

judge to take down this evidence. But he did, in fact, take it down, and it, as taken down, was afterwards agreed upon as true by the parties, and approved as true by the court; and this, for two purposes : one, a motion for a new trial; the other a writ of error to this court; and there is law that does both authorize and require the evidence to be so agreed upon, or so approved for each of those purposes. The paper then became, in reference to these two purposes, an original paper, authorized and required by law.

It was argued, thirdly, that even conceding that there was authority of law for making the original, yet, that, as that was made, not for the purpose of being read in evidence before the jury, but for the mere purpose of being used before the lower court, on the motion for the new trial, or before this court on the writ of error, the original itself, would not, if present, have been admissible.

This argument, if good, would equally exclude from the jury, evidence taken down in case of felony—for even in such cases, the purpose of taking it down, is, probably, that it may be used in applications for pardon and respite; not that it may be used as even secondary evidence before the jury. But can it be true that the receivability of a party's admission, or of a court's judgment, depends on the purpose for which the admission was made, or the judgment rendered ? It cannot, we think, unless there be something restricting the admission or the judgment to that special purpose. The test surely ought to be no more than this : is it probable that the admission admits only what is true—that the judgment sanctions only what is true. For the truth is all that justice requires. And taking this as the test, the paper in question, would, it is certain, be admissible. Is it likely that the parties agreed to anything as proved that was not proved, even though the only purpose of this agreement was to comply with the requisitions of the law as to new trials, and the law

as to writs of error? Is it likely that the court would have approved as true, anything that was not true, even though the purpose of the approval was merely to comply with the requisitions of these same laws? Certainly it is not. Surely all will agree that a paper thus agreed to by the parties, and approved by the court, will be more trustworthy on the question what was the evidence delivered on the trial, than the daily fading recollection of persons who happened to hear the evidence when it was so delivered.

We think, then, that this last argument is not any more than the first two, sufficient to show that this copy ought to have been excluded from the jury.

[3.] No other argument occurs to us as sufficient to justify its exclusion; consequently, we think the that exclusion of it was an error.

The third ground of the motion was the statement of the court to the jury, that whatever might be the opinion of the judges of this court on the evidence before the jury, that opinion was a matter with which they had nothing to do.

In respect to this ground it is sufficient to say, that the judges of this court did not, as a court, express any opinion at all on the evidence in the case. If they had, it would be a grave question, whether it would be true that that opinion would be a matter with which the new jury would have "nothing to do." This court abstained from passing any judgment on the ground that the verdict was contrary to the evidence.

The last ground in the present motion was, that the verdict was contrary to the evidence.

We again abstain from rendering any judgment on this ground. The exclusion of the copy-brief of the evidence makes it necessary that there should be a new trial, and a new trial is all that the plaintiff in error asks for, or is entitled to. An opinion of this court on the evidence is,

for obvious reasons, generally withheld, if it can be with-held.

Judgment reversed.