1071.   GEORGIA RAILWAY & ELECTRIC COMPANY *v.*

DOUGHERTY.

1. D. sued a street-railway company for damages on account of personal injuries received by him. There was, on the trial, a direct conflict in the testimony on the controlling question in the case. D. was the only witness in his own behalf on this point. His testimony was contradicted by three witnesses introduced by the defendant. Counsel for D., in the concluding argument, said he hoped that some of the jury knew D. personally, and said further that a man's life, if properly lived, was his best asset. Defendant's counsel objected to this statement, on the ground that a juror could not consider his personal knowledge of the plaintiff; and moved the court to caution the jury to that effect. This the court declined to do. Counsel for the plaintiff then made a similar statement to the jury, and the defendant's counsel again moved the court as above stated, but the court again declined to interfere. *Held,* that the court erred in refusing to instruct the jury that a juror must not consider any personal knowledge that he might have in reference to the plaintiff's character. What passed between the court and counsel might have left the jury under the impression that a juror could consider his personal knowledge of the plaintiff's character.

2. Where an attempt is made to impeach a witness by proof of contradictory statements previously made, the witness may explain the statement previously made, by showing that it was not made with reference to the transaction then being investigated, but was made with reference to another transaction, that happened at a different date, and may also give the details of the former transaction, for the purpose of showing that they corresponded with the alleged contradictory statements previously made.

3. The other assignments of error are without merit.

Action for damages, from city court of Atlanta—Judge Reid. January 6, 1908.

Argued May 7,—Decided July 31, 1908.

*Rosser & Brandon, Walter T. Colquitt, Ben. J. Conyers,* for plaintiff in error.

*Arnold & Arnold, Harvey Hill, C. D. Hill,* contra.

HILL, C. J., being disqualified, Judge Pendleton, of the Atlanta circuit was designated to sit in this case.

PENDLETON, J.   1.   The plaintiff in the court below sued for damages which he alleged he received in alighting from a car of the defendant company. He claimed that the car stopped, and that, while he was in the act of stepping from the car, it suddenly started forward and threw him to the ground. The defendant claimed that the plaintiff stepped from the car while it was in

motion and before it came to a stop. The plaintiff supported his theory of the case by his own testimony alone. The defendant supported its theory of the case by the testimony of three witnesses. The judge charged the jury that, under the admissions made by counsel for defendant, it was not necessary for them to consider the question of negligence. It was admitted by defendant's counsel that the plaintiff would be entitled to recover if he received the injuries in the way he claimed to have received them, but it was contended that he would not be entitled to recover if he received them in the way the defendant claimed he received them. It will thus be seen that there was a plain and sharp contest before the jury between the plaintiff's theory and the defendant's theory. The plaintiff's theory was supported by one witness, —the plaintiff himself; the defendant's theory was supported by three witnesses. It was therefore necessary to the plaintiff's recovery that the jury should give more credit to his testimony than to that of these three witnesses. His counsel, in the concluding argument, stated to the jury: "Gentlemen, I don't know whether any of you are personally acquainted with the plaintiff, but I trust you are." Counsel for the defendant appealed to the court to stop this line of argument, on the ground, among others, "that the jury could not legally consider their personal knowledge of the plaintiff's character and reputation." The court declined to interfere, and counsel for the plaintiff continued: "Gentlemen, I hope that some of you do know Mr. Dougherty. A man's life, if properly lived, is his most valuable asset. No noble life was ever lived in vain. If there should arise a question of veracity between Gen. R. E. Lee, on the one side, and two or three like myself, and Ben Conyers, and Walter Colquitt, on the other, you would, and ought, to believe General Lee rather than a whole cow pen full of us." Defendant's counsel then again moved the court to stop this line of argument, and to grant a mistrial, or caution the jury against giving consideration to their personal knowledge of the plaintiff's character, but the court overruled this motion, and allowed counsel to proceed with the same line of argument.

What was the meaning of counsel's statement to the jury? It was, in effect, this: "In this sharp conflict between Mr. Dougherty and three witnesses, I trust there are some of the jury who know Mr. Dougherty personally; I hope some of you know him; a

man's life, if properly lived, is his most valuable asset, and I feel sure that if you know that life, you will believe him in preference to all three of these witnesses who testify against him." Plaintiff's counsel say there was no intimation as to whether Mr. Dougherty's character was good or bad. Certainly the jury would not suppose that he was "hoping" that they would know something about the plaintiff that was bad. They also contend that Mr. Dougherty's character was in issue. Suppose it was; that issue ought to be tried, like all other issues, by the testimony. Again, it is claimed that the presumption was that Mr. Dougherty's character was good. It is quite evident that counsel was not calling the attention of the jury to presumptions; there were three other witnesses who had presumptions in their favor. Something that the other witnesses did not have in their favor was what was needed, and what was evidently being sought after. We are not, however, considering this statement of counsel from any of these standpoints, but from the standpoint that what passed between the defendant's counsel and the court, in view of the statements made, would authorize the jury to infer that a juror might consider his personal knowledge of the plaintiff's character.

At the common law, a juror was permitted to consider his personal knowledge of the plaintiff, the witness, and the facts. This resulted from the fact that the jury came from the vicinage; for the reason that they were supposed to know the parties, the witnesses, and the facts. In *Rogers* v. *King,* 12 *Ga.* 229, there is an obiter to this effect, which seems to be followed in *Anderson* v. *Tribble,* 66 *Ga.* 584, *Head* v. *Bridges,* 67 *Ga.* 236, and *Howard* v. *State,* 73 *Ga.* 84. These cases were reviewed and overruled in *Chattanooga, Rome & Columbus R. Co.* v. *Owen,* 90 *Ga.* 265 (15 S. E. 853), the court holding that jurors must not consider their personal knowledge of the witnesses. This decision was made in 1892, and was codified by the compilers of the code of 1895, and appears as §5337, as follows: "A juror should not act on his private knowledge respecting the facts, witnesses, or parties, unless sworn and examined as a witness in the case." In *Savannah, Florida & Western Ry. Co.* v. *Quo,* 103 *Ga.* 125 (29 S. E. 607, L. R. A. 483, 68 Am. St. R. 85), this section is cited to support the proposition that a juror could be introduced as a witness; as is also the case of *Chattanooga, Rome & Columbus R. Co.* v. *Owen,*

supra. Section 5146 of the Civil Code deals with the question of the credibility of the witnesses, and provides that the juror may consider, along with many other things, in passing upon the credibility of the witnesses, "their personal credibility, so far as the same may legitimately appear from the trial." The personal knowledge of the juror does not legitimately appear, if the juror is not sworn and examined in the case; and if a verdict is based on that knowledge, in a case in which he is not sworn as a witness, it is based on that which is dehors the record. When counsel for the plaintiff, in the concluding argument, expresses the hope that some of the jury may have a personal knowledge of the plaintiff, who has been sworn as a witness in his own behalf, and opposing counsel object, on the ground that a juror should not consider his personal knowledge of the plaintiff, the court ought to caution the jury against considering any personal knowledge that any of their number might have as to the plaintiff's character.

2. The defendant introduced the conductor as a witness. He testified that the car was moving at the time the plaintiff stepped off, and that the plaintiff stated to him as soon as he got up, after having fallen, that the company was not at fault; that he had made a mistake in supposing that the car had stopped when it had not. The plaintiff was reintroduced as a witness, and admitted that he had a conversation with a conductor, in substance as stated, but testified that it was at another time. He stated that on a former occasion he stepped off the car while it was in motion; and he went into details of the former transaction, to show that it was not the injury for which he was then suing. The defendant objected to all of this testimony, on the ground that it was hearsay, irrelevant, and a self-serving declaration. The court allowed the testimony, and, we think, correctly. It was a difference of recollection between the witnesses as to the dates of the occurrences. If A testified that B made a statement to him on a given date, B would certainly be allowed to admit the statement, but deny the date, and to go further and show that he was a thousand miles away on the date in question, in a distant city, and go into particulars to show that he could not be mistaken about the date. It has been held that a witness may explain a contradictory statement, by showing that he was drunk when it was made, or that he did not understand the full effect of the English language, or that the scrivener

did not correctly take down the statement. *Jesse* v. *State, 20 Ga.* 156, supports the last proposition. It would seem to be clear that the witness could deny the date of a contradictory statement and that it referred to the transaction in question, and could state the transaction that it did refer to.    *Judgment reversed.*

POWELL, J., specially concurring.

If the legislature or one of those courts by whose decisions I am judicially bound should declare that twice two are five, I would not know, in the law of the next case coming before me and involving mathematics, whether three times three should be declared to be six, or some other number. Such inconsistencies frequently harass my judgment and always leave me in doubt. Our Supreme Court, and the legislature, through the code, have declared that the jurors shall not act upon personal knowledge of the character of the parties and the witnesses. Ideally speaking, this is possible; practically and psychologically considered, it is impossible. The jurors, as human beings, in passing upon the credibility of the witnesses, necessarily must be, and in all cases are, to a greater or less degree affected by whatever knowledge they personally possess as to the character of the persons testifying. Shall we say, then, that an intelligent lawyer (knowing as he does that, despite the mandate of the law to the contrary, the jurors will necessarily, to some extent, use their private knowledge if they have any) must absolutely ignore this practical feature of his case? May he not candidly assume this truth, in his discussion of the case to the jury? Suppose Mr. Hill had said to the jury, "The law forbids that you should act upon your personal knowledge of the character of the witnesses; but I know that in a large degree this is psychologically impossible; and I congratulate myself, as counsel for the plaintiff, who has testified in his own behalf, that I am to suffer no disadvantage from this fact, in that I feel sure that whatever personal knowledge you possess and may use will merely corroborate, and not tend to detract, from that good character which the law allows you to presume he possesses," would this have been improper? It is conceded that, in the absence of evidence showing to the contrary, the law presumes that every party and witness is of good character, and that this presumption is sufficient of itself to justify counsel in urging to the jury, or in assuming before the jury, that the party or witness is of good character.

See *Bennett* v. *State*, 86 *Ga.* 404 (12 L. R. A. 449, 22 Am. St. R. 465, 12 S. E. 806). It is conceded that in this case it was legitimate to point to the fact that the plaintiff had lived in the community throughout a long number of years and had been engaged in an honorable occupation; for these things appeared from the evidence. From this circumstance the presumption of his good character was strengthened; for if his life had not been honorable, his bad character would thereby have been so much the more easily capable of proof by the defendant. There was no evidence of his bad character; nothing on the trial indicated it. His good character was therefore a fact established in the case,—a fact of which the jury were required to take cognizance, even under the most ideal view of the jury's prerogative in such matters. If the remarks of the plaintiff's counsel in the present case are to be construed as urging the jury to act upon their private knowledge and find that the plaintiff was of good character, he was merely asking them to reach, through that practical process which he as a reasonable man knew they would use, the same result as .they should necessarily reach by the theoretical process which the law prescribes. If the actual and the theoretical truth in a given case are demonstrated to be the same thing, I can not see how either the opposite party or the ultimate ends of justice can be very much hurt by the application of the one where the other is required. Now if Mr. Hill had said to the jury, of the witnesses for the opposite side, literally or in substance, "Gentlemen, they are presumed to be of good character, but in this case they are not telling the truth. We have not attacked their characters by proof, but I hope you know them personally, for your personal knowledge will not corroborate the presumption which the law raises in their favor," then there would have been an attempt to array the actual against the theoretical truth, and the court could logically say, "This is juridic error." I think that counsel should be allowed considerable latitude in argument, provided they do not attempt to bring into the case illegitimate extraneous facts. Matters which the law authorizes to be presumed are not extraneous; nor are those things which are within the range of the ordinary and common observation of all thinking men. At one time there was a tendency, in the decisions of our Supreme Court, to hold counsel to what, to my mind, seems to be undue strictness;

but there is a tendency in the later decisions of that court to allow greater latitude. My personal judgment as to what is best leads me to desire to do nothing to counteract this tendency in what seems to be the right direction; and out of this consideration I am strongly led to dissent in this case. However, this verdict is not strongly supported by the evidence; and since what the French would call the tout ensemble of this incident of the trial may have unfairly prejudiced the defendant's case, I will specially concur. See, in this connection, the concluding remarks in the *Bennett* case, supra. If counsel for the defendant had desired the jury to be instructed that they had no right to act on personal knowledge of the witness or party, a timely written request would have availed them.